# 2006 DTA 49

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**

EL PUEBLO DE PUERTO RICO
Peticionario

v.

MAYRA I. CARRIÓN RIVERA, MITCHELLE LÓPEZ MILLÁN
Recurridos

Núm. KLCE-2005-01561

San Juan, Puerto Rico, a 22 de febrero de 2006

Panel integrado por su Presidenta, la Juez Cotto Vives,
el Juez Aponte Jiménez y el Juez Morales Rodríguez

**TEXTO COMPLETO DE LA RESOLUCIÓN**

El Pueblo de Puerto Rico, por conducto del Procurador General, nos solicita que revoquemos dos resoluciones emitidas por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 10 de octubre de 2005. En éstas se desestimaron las denuncias presentadas contra Mayra Carrión Rivera y Mitchelle López Millán por

infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, Ley 4 de 23 de junio 1971, según enmendada, 24 L.P.R.A. sec. 2404. ■

Inconforme, el Procurador General aduce —en su recurso ante nos— que el Tribunal de Primera Instancia erró al desestimar las acusaciones debido a que existía justa causa para la dilación en celebrar la vista preliminar correspondiente. Además, señaló que el Ministerio Público estaba preparado para presentar su caso aun sin el testimonio del agente policiaco que efectuó la prueba de campo en la escena de los hechos. Finalmente, argumentó que el informe preparado por el agente es admisible como una excepción a la regla general de exclusión de prueba de referencia en virtud de la Regla 65(H) de Evidencia, 32 L.P.R.A. Ap. II, R. 65(H).

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari* solicitado por la parte peticionaria.

# I

Examinemos los hechos. El 9 de septiembre de 2005, los imputados Mitchelle López Millán y Mayra I. Carrión Rivera fueron puestos bajo arresto y se les presentaron denuncias por infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, *supra*. Se determinó causa probable para el arresto y se impusieron las correspondientes fianzas. ■ Según surge del expediente, ambos imputados fueron ingresados en instituciones penales, al no prestar la fianza impuesta. En esa ocasión, el Tribunal de Primera Instancia, pautó para el 20 de septiembre la conferencia para vista preliminar y pautó la vista preliminar para el 28 de septiembre de 2005.

Ese día, la defensa del señor López Millán expresó estar preparada para que se celebrara la vista preliminar en los méritos. Sin embargo, el Ministerio Público solicitó se transfiriera la vista e informó que el agente Pablo O. Torres Rivera —quien realizó la prueba de campo de las sustancias que les fueron ocupadas a los recurridos el día de su arresto—, no había comparecido ante el Tribunal. Por esta razón, el tribunal *a quo* concedió un nuevo señalamiento de vista preliminar para el 5 de octubre de 2005.

El día 5 de octubre, la defensa del señor López Millán reiteró estar preparada para la celebración de la vista en los méritos. Nuevamente, el Ministerio Público adujo no estar preparado debido a que el agente Torres Rivera no se encontraba en sala por hallarse enfermo. El Tribunal de Primera Instancia concedió un nuevo señalamiento para el 10 de octubre de 2005 y le ordenó al Ministerio Público que presentara evidencia médica con respecto a la condición de salud del agente Torres Rivera.

El 10 de octubre, la defensa del señor López Millán expresó, una vez más, estar preparada para argumentar los méritos del caso. Por tercera ocasión, el Ministerio Público le informó al tribunal recurrido, que el agente Torres Rivera no se encontraba presente en sala. Dicha parte tampoco presentó evidencia médica de ello, según le ordenó el tribunal en ocasión del señalamiento anterior. No obstante, aseguró que, como dicho agente no era un testigo esencial en el caso, se encontraba preparado para la celebración de la vista preliminar.

La defensa del señor López Millán solicitó la desestimación de las denuncias y el Ministerio Fiscal se opuso. El foro recurrido, luego de escuchar los argumentos de ambas partes, ordenó la desestimación de las denuncias al amparo de la Regla 64(n)(5) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(n)(5).

# II

El derecho a un juicio rápido, que le asiste a todo imputado de delito, fue establecido mediante el Artículo II, Sec. 11 de la Constitución de Puerto Rico, 1 L.P.R.A. Art. II, sec. 11. *Pueblo* v. *Valdés et al.*, 155 D.P.R. ___ (2001), **2001 J.T.S. 170**. Esta protección constitucional se activa cuando se pone en movimiento el mecanismo procesal que puede culminar en la convicción del acusado y cuyo efecto legal es obligar a éste a responder por la comisión del delito que se le imputa. *Pueblo* v. *Cartagena Fuentes*, 152 D.P.R. 243 (2000); *Pueblo* v. *Valdés*

*et al., supra.*

Como es sabido, el derecho a juicio rápido protege tres valores del sistema de justicia criminal, a saber:

*"(1) protege contra la indebida y opresiva encarcelación antes del juicio;*

*(2) procura minimizar la ansiedad y preocupación que genera una acusación pública; y*

*(3) limita las posibilidades de que una dilación extensa menoscabe la capacidad del acusado para defenderse."*

*Pueblo v. Valdés Medina, supra.*

Por su parte, la Regla 64(n) de Procedimiento Criminal, *supra*, regula estatutariamente el derecho a juicio rápido y establece los términos para la presentación de la acusación en los casos graves, así como para la celebración de la vista preliminar, de acuerdo con la condición procesal del imputado. Dichos términos corren simultáneamente partiendo del momento del arresto o de la detención del imputado. *Pueblo* v. *Cartagena Fuentes, supra.*

En lo pertinente, la Regla 64(n) de Procedimiento Criminal, *supra*, dispone:

*"La moción para desestimar la acusación o la denuncia, o cualquier cargo de las mismas, sólo podrá basarse en uno o más de los siguientes fundamentos:*

*(a) . . .*

*. . .*

*(n) Que existen una o varias de las siguientes circunstancias, a no ser que se demuestre justa causa para la demora o a menos que la demora para someter el caso a juicio se deba a la solicitud del acusado o a su consentimiento:*

*(1) Que el acusado estuvo detenido en la cárcel por un total de treinta (30) días después de su arresto sin que se hubiere presentado acusación o denuncia contra él, o que ha estado detenido por un total de quince (15) días sin que se hubiere presentado una acusación o denuncia contra él si se tratare de un caso en que un magistrado autorizó la radicación de las mismas de conformidad con lo dispuesto en la Regla 6(a).*

*(2) Que no se presentó acusación o denuncia contra el acusado dentro de los sesenta (60) días de su arresto o citación o dentro de los treinta (30) días si se tratare de un caso en que un magistrado autorizó la radicación de las mismas de conformidad con lo dispuesto en la Regla 6(a).*

*(3) Que el acusado estuvo detenido en la cárcel por un total de sesenta (60) días con posterioridad a la presentación de la acusación o denuncia sin ser sometido a juicio.*

*(4) Que el acusado no fue sometido a juicio dentro de los ciento veinte (120) días siguientes a la presentación de la acusación o denuncia.*

***(5) Que la persona estuvo detenida en la cárcel por un total de treinta (30) días después de su arresto sin que se le hubiere celebrado la vista preliminar en los casos en que deba celebrarse.***

*(6) Que no se celebró vista preliminar a la persona dentro de los sesenta (60) días de su arresto en los casos en que deba celebrarse."*

Énfasis suplido.

La determinación de lo que constituye *"justa causa"* para efectos del inciso (n) de la Regla 64 de las de Procedimiento Criminal, *supra*, debe hacerse caso a caso y utilizando el criterio de la totalidad de las circunstancias. *Sin embargo, para que el motivo de una demora en celebrar la vista preliminar o presentar una acusación constituya justa causa, debe estar enmarcado dentro de parámetros de razonabilidad. Pueblo* v. *Valdés et al., supra.*

Una vez el imputado de delito reclama oportunamente una violación a los términos establecidos en la Regla 64(n) de Procedimiento Criminal, *supra*, **el Ministerio Público tiene el peso de demostrar la existencia de causa justificada para la demora,** *la renuncia expresa, voluntaria y con pleno conocimiento de este derecho por parte del imputado o que éste ha sido el causante de la tardanza. Pueblo* v. *Valdés et al., supra,* (Énfasis suplido).

El Tribunal Supremo ha resuelto que cuando la suspensión de la vista preliminar o del juicio es por justa causa o por causa imputable al acusado, los términos de juicio rápido dispuestos en la Regla 64(n) de Procedimiento Criminal, *supra*, comienzan a decursar *desde la fecha en que estuvieran tales vistas señaladas. Pueblo* v. *Cartagena Fuentes, supra.*

Existen cuatro criterios que deben examinarse, junto con otras circunstancias relevantes, para evaluar las reclamaciones de violación al derecho a juicio rápido de un imputado de delito. Estos son:

*"1. duración de la tardanza;*

*2. razones para la dilación;*

*3. si el acusado ha invocado oportunamente ese derecho, y*

*4. perjuicio resultante de la tardanza."*

*Pueblo* v. *Rivera Tirado*, 117 D.P.R. 419 (1986); *Pueblo* v. *Valdés et al., supra.*

En cuanto a la duración de la tardanza, el Tribunal Supremo ha expresado que la mera inobservancia de los términos, sin más, no necesariamente constituye una violación al derecho a juicio rápido, ni conlleva la desestimación de la denuncia o la acusación. Aunque una dilación mínima es requisito de umbral para que un planteamiento de violación a juicio rápido progrese, el remedio extremo de la desestimación sólo debe concederse luego de efectuado un análisis ponderado del balance de los cuatro criterios antes mencionados. Es decir, la dilación en exceso de los términos estatuidos en la Regla 64(n) de Procedimiento Criminal, *supra*, es el factor que hace necesario la realización de este balance. *Pueblo* v. *Valdés et al., supra.*

El primer error apuntado, en esencia, se refiere a la controversia de si —conforme a los hechos de este caso—, se violentó el derecho a juicio rápido al no celebrarse la vista preliminar dentro del plazo de 30 días dispuesto por la Regla 64(n)(5) de Procedimiento Civil, *supra*. Sobre el particular, el Ministerio Público alegó que en este caso, el término de juicio rápido dispuesto en la Regla 64(n)(5) de Procedimiento Criminal, *supra*, no había expirado. Según éste, como los señalamientos de vista preliminar anteriores al 10 de octubre se habían suspendido por justa causa, el término de treinta días —contado después del arresto de los imputados— para celebrar la referida, vista se interrumpió y comenzó a decursar nuevamente a partir de la fecha del último

señalamiento. No tiene razón.

Según se desprende del expediente, y contrario a lo alegado por el Procurador General en la pág. 11 de su escrito de *certiorari*, el día 10 de octubre de 2005 —fecha en la cual el Tribunal de Primera Instancia desestimó las denuncias en el caso de epígrafe—, *fue el tercer señalamiento de aquel foro para celebrar la vista preliminar de la señora Carrión Rivera y el señor López Millán*. Debemos significar el hecho de que, en el recurso presentado por el Procurador General, se omite mencionar los primeros dos señalamientos de vista preliminar, los cuales tuvieron lugar los días 28 de septiembre y 5 de octubre de 2005. Tanto es así, que como parte del apéndice del recurso sólo presentó los proyectos de denuncia y no las denuncias suscritas por la juez luego de determinarse causa para el arresto, en las cuales aparece la fecha pautada para la vista preliminar. ■ Esa dudosa actuación nos lleva a pensar que se pretendió ocultar dicha información a este Tribunal. Por el contrario, el recurrido acompañó copia de los documentos en cuestión, los cuales constan como Anejos I y II del Apéndice de su escrito.

En el primer señalamiento, el 28 de septiembre de 2005, el Ministerio Público adujo no estar preparado para la vista preliminar debido a la ausencia del agente Torres Rivera. En esa ocasión, no adujo que la presencia del referido agente era innecesaria para argumentar el caso. En el segundo señalamiento, el 5 de octubre del mismo año, el Ministerio Público alegó que el agente Torres Rivera no se encontraba en sala porque se encontraba enfermo. *En esa ocasión, tampoco adujo que el testimonio del referido policía no era necesario para la presentación de su caso.* Aunque el tribunal recurrido accedió a la suspensión de la vista, *exigió que se presentara un certificado médico que certificara la condición de salud del agente.*

En el tercer señalamiento, el 10 de octubre de 2005, *el Ministerio Fiscal pretendió volver a excusar al agente Torres Rivera; sin embargo,* **no presentó la certificación médica en cumplimiento de la orden que le había sido emitida por el Tribunal de Primera Instancia** *ante las repetidas ausencias del testigo a la vista preliminar de este caso. No obstante,* en esta última ocasión, el peticionario alegó que la comparecencia del agente *no era necesaria para celebrar la vista preliminar, por lo cual argumentó que presentaría su caso sólo con el informe de la prueba de campo realizada por dicho agente.* Si dicho testimonio no era imprescindible, resulta inexplicable que en los dos señalamientos de vista anteriores ese precisamente haya sido el fundamento para solicitar la transferencia de vista.

De otra parte, el recurrido fundamentó su solicitud en que estuvo detenido en la cárcel por un total de 30 días después de su arresto sin que se celebrara la vista preliminar —y por causas no imputables a los acusados—. Procede entonces que evaluemos si, en las circunstancias del caso ante nuestra consideración, se configuran los criterios que justifiquen la dilación habida según esbozados en el caso de *Pueblo v. Valdés, supra.*

En este análisis, debemos tener presente que en el caso citado, el Tribunal Supremo nos instruye en el sentido de que el peso que se le confiere a cada uno de los criterios allí enunciados, está supeditado a las demás circunstancias que el Tribunal viene obligado a examinar. Adviértase que en ese caso, de forma inequívoca, el Tribunal Supremo dispuso que, aun cuando las demoras no intencionales merezca un trato más laxo, ello no supone que —estando ausente otras circunstancias—, se justifique la inobservancia de los términos de juicio rápido. Tanto es así que dicho foro ha dispuesto que no constituye justa causa ni la congestión del calendario del tribunal, ni la insuficiencia de recursos humanos y presupuestarios en el gobierno.

Con lo anterior en mente, analicemos dichos criterios a la luz de lo aquí acontecido. En primer término, es incuestionable que la situación que atendemos cumple con los criterios tercero y cuarto [(3) que el acusado invocó oportunamente ese derecho; y el (4) perjuicio resultante de la tardanza]. Es obvio que la razón de este recurso obedece a la oportuna alegación del imputado sobre la violación al referido término. Igualmente, es innegable el perjuicio que la encarcelación le ocasiona. No obstante, el Ministerio Público pretende que

pasemos por alto la condición procesal de encarcelamiento del recurrido. De hecho, el Tribunal Supremo ha manifestado que la detención de un individuo afecta el derecho fundamental a la libertad y repercute en su honra y reputación, por lo que su violación **constituye un perjuicio real y sustancial**. *Valle Izquierdo v. E.L. A.*, **2002 J.T.S. 70**. Énfasis suplido.

Procede entonces que nos enfoquemos en considerar los primeros dos criterios antes aludidos. [(1) duración de la tardanza; y (2) razones para la dilación]. Somos de opinión de que el análisis de cada uno de estos criterios está supeditado al análisis del otro, cuanto menos en el caso ante nuestra consideración. Veamos.

Primeramente, es preciso enfatizar que, para que un imputado invoque ese derecho, basta con que la persona haya estado restringida de su libertad física por más de 30 días. Ese es el caso ante nos. La regla es clara al imponer un **término máximo** de treinta (30) días para celebrar la Vista Preliminar. Adviértase que el Estado contó con esos 30 días para estar preparado para la celebración de la vista preliminar. Aunque es de conocimiento general que el cómputo matemático no es el criterio único al momento de considerar dicha violación a los términos, sí es determinante cuando se analiza a la luz de las razones aducidas para la dilación.

De ahí que consideremos crucial para nuestro análisis, las razones esbozadas por el Ministerio Público para la dilación. Previo hacerlo, tengamos presente que el Tribunal Supremo ha reiterado que el derecho constitucional a juicio rápido es variable y flexible y **debe ajustarse a cada caso en particular.** (Énfasis nuestro). *Pueblo v. Carrión Rivera*, **2003 J.T.S. 102**; *Pueblo v. Valdés et al.*, **2001 J.T.S. 170**. Siendo así, resulta patente que en el caso de autos, el Ministerio Público no demostró diligencia alguna para conseguir la comparecencia de su testigo —el agente que realizó la prueba de campo—. Tampoco presentó prueba alguna para establecer la alegada condición de salud que le imposibilitaba al agente comparecer, lo que ocasionó tres (3) señalamientos para la vista preliminar. Sin duda, el Fiscal tenía el peso de la prueba para demostrar que existía causa justificada para la dilación habida. No es hasta conocer el motivo real de la dilación que el tribunal estaría en posición de saber cuánto tiempo adicional era el razonable y justificado para no violentar el derecho a juicio rápido. Debemos estar alerta para no caer en la interpretación de que —sin mayores criterios—, la dilación de un día no violenta tal derecho. Ello equivaldría a validar cualquier demora sin contar con criterios para así hacerlo. Dicho de otro modo, ello constituiría *de facto* una enmienda a la Regla 64(n)(5) o, lo que es peor, nos llevaría a descartar, de forma liviana y sin mayores elementos de juicio, el término estatutariamente establecido.

Como se puede apreciar, la conducta de la parte peticionaria denota una marcada desatención a los diversos señalamientos de vista efectuados por el Tribunal de Primera Instancia. Desde el arresto de los imputados, el 9 de septiembre de 2005, hasta el 10 de octubre de ese año, (fecha del tercer señalamiento de vista preliminar), el Ministerio Público tuvo tiempo suficiente para preparar su caso y lograr la comparecencia del agente que realizó la prueba de campo. Cuanto menos, tuvo oportunidad de evidenciarle al Tribunal de Primera Instancia el estado de salud del agente mediante el correspondiente certificado médico. *No es razonable que, después de tres suspensiones alegando que no podía entrar a la vista preliminar ante la ausencia de ese testigo, ahora aduzca que la desestimación de las denuncias no estuvo justificada porque la presencia de éste no era imprescindible para presentarlo.*

A nuestro juicio, resulta injustificada la pretensión del Ministerio Fiscal de que el tercer señalamiento para vista preliminar se suspendiera nuevamente —para una fecha *fuera del término dispuesto en la Regla 64(n)(5) de Procedimiento Criminal supra*— cuando ni siquiera, como dijimos, acreditó la alegada enfermedad de su testigo, así como **tampoco cumplió con la orden emitida por el tribunal** *a quo* a esos efectos. Conforme a estos hechos, es inescapable concluir que el Fiscal en modo alguno justificó la dilación en el caso y, por ende, no demostró que haya existido justa causa para la demora en la celebración de la vista preliminar. Resolver en contrario, sería tomar a ciegas y sin evidencia alguna, la repetitiva excusa del Ministerio Público. En consecuencia, el primer error señalado por el Procurador General en su recurso —referente a que existía justa

causa para la dilación en la celebración de la vista preliminar—, no se cometió.

De otra parte, en cuanto al segundo error apuntado se refiere, el peticionario argumenta que en la etapa de vista preliminar, el Ministerio Fiscal no está obligado a demostrar fuera de duda razonable la culpabilidad de los imputados. En vista de ello, aduce que fue un error del Tribunal de Primera Instancia el haber desestimado las denuncias después de que éste alegó estar preparado para entrar a atender la vista preliminar en los méritos, aun sin la presencia del agente Torres Rivera en sala, el cual —dicho sea de paso— resultaba ser el único testigo para tratar de validar o probar que la prueba de campo se realizó adecuadamente y que era confiable. Según el Ministerio Fiscal, la presentación del informe relacionado a la prueba de campo —preparado por el referido agente—, era suficiente para cumplir con el *quántum* de prueba requerido en la vista preliminar. Tampoco tiene razón.

La Regla 65(H) de Evidencia, *supra*, dispone —como excepción a la regla de exclusión de prueba de referencia, aunque el declarante esté disponible como testigo— sobre la admisibilidad *"de un escrito hecho como récord o informe de un acto, condición o evento, cuando se ofrece para probar el acto, condición o evento, si el escrito fue hecho en o cerca del momento del acto, condición o evento, por y dentro del ámbito del deber de un empleado público, siempre que las fuentes de información y el método y momento de preparación fueran tales que indican su confiabilidad."* (Énfasis suplido.)

Con respecto a la citada Regla 65(H) de Evidencia, *supra*, el tratadista Ernesto L. Chiesa expresa que la admisibilidad del récord o informe oficial está condicionada a que se satisfagan los siguientes tres requisitos:

*"1. el escrito fue hecho por, y dentro del ámbito de los deberes de un funcionario público;*

*2. el escrito fue hecho en o cerca del momento del suceso, acto o condición a que se refiere el mismo;*

*3. la fuente de información, así como el momento y método de preparación del escrito, son tales que indican su confiabilidad."*

Ernesto L. Chiesa, *Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales)*, República Dominicana, **Publicaciones JTS**, 1998, Vol. II, Cap. VIII, págs. 837-846; *Pueblo v. Mattei Torres*, 121 D.P.R. 600 (1998).

Tanto en los casos civiles como en los casos criminales, cuando la prueba es ofrecida por la defensa, la Regla 65(H), *supra*, debe ser interpretada liberalmente a favor de la admisibilidad. No obstante, en cuanto a los casos criminales se refiere, *cuando la prueba de referencia se ofrezca contra un acusado*, el tribunal deberá:

*"1. examinar el problema de confrontación;*

*2. examinar la admisibilidad de la prueba bajo otras posibles excepciones aplicables;*

*3. examinar rigurosamente si bajo la Regla 65(H) se satisfacen los tres requisitos antes indicados."*

*Pueblo v. Mattei Torres, supra.* El Tribunal Supremo ha dispuesto que, como regla general, informes como los de autopsia y del químico deben admitirse. Sin embargo, en cuanto a los informes policíacos, la situación debe ser examinada caso a caso. *Pueblo v. Mattei Torres, supra.* A estos efectos, dicho foro ha expresado lo siguiente:

*"Tal y como señala el acusado a través de su representación legal, de ordinario, la única defensa que tiene cualquier persona contra quien se vaya a utilizar un resultado de una prueba científica es cuestionar su*

*confiabilidad o su certeza. Es evidente que no se puede cuestionar la confiabilidad de una prueba científica si se desconoce la manera en que ésta opera, el mantenimiento que se le debería dar y la manera en que tiene que ser utilizada. Sin esta información es imposible cuestionar efectivamente la manera en que fue utilizada y el mantenimiento que recibió.* " (Énfasis suplido.)

*Pueblo* v. *Santa-Cruz*, 149 D.P.R. 223 (1999).

En el caso de autos, el problema estriba, precisamente, en que el agente Torres Rivera —quien realizó el informe con relación a la prueba de campo de las sustancias que le fueron ocupadas a los imputados—, no estaba presente en sala y disponible para ser contrainterrogado en cuanto al método y momento de preparación de dicha prueba, de modo que pudiera determinarse la confiabilidad del contenido de ese escrito. Admitir que la vista preliminar se celebrara sin que el Ministerio Público presentara a dicho testigo, y contando sólo con el informe del agente, hubiese tenido el efecto de impedir a la defensa la adecuada oportunidad de contrainterrogarlo para conocer la metodología utilizada y la experiencia de éste en la realización de este tipo de prueba. Sin duda, ello lesiona seriamente el derecho a confrontación que le asiste a los imputados, en la medida en que también hubiese impedido cuestionar la confiabilidad y certeza de la prueba cuyo resultado se pretendía presentar como evidencia única en su contra.

En vista de lo anterior, en este caso no era posible determinar cuán confiable era el informe en el cual el Ministerio Fiscal pretendió apoyar su caso. Dicho sea de paso, es menester señalar que es de conocimiento general que la prueba de campo no ofrece las mismas garantías de confiabilidad que las pruebas de laboratorio que realiza el químico de la policía.

Como si lo anterior no fuera suficiente, no podemos pasar por alto que, además, el Ministerio Público incumplió con la orden del Tribunal de Primera Instancia de acreditar mediante certificado médico, el estado de salud del agente Torres Rivera. Con su actuación, el Ministerio Público, además, impidió que el tribunal recurrido pudiera considerar si era o no justificada la ausencia del agente y que ello, a su vez, pudiese constituir una razón válida para la dilación habida en celebrar la vista preliminar, lo cual, como ya dijimos, constituye uno de los requisitos enunciados por el Tribunal Supremo. *Pueblo v. Rivera Tirado, supra; Pueblo v. Valdés et al., supra.*

En consecuencia, el informe relacionado a la prueba de campo no era admisible por vía de la excepción recogida en la Regla 65(H) de Evidencia, *supra.* ▮ Según resolvió el Tribunal Supremo en *Pueblo* v. *Cruz Bayona*, 124 D.P.R. 568 (1989), en el caso de autos, el Ministerio Público no presentó la prueba mínima necesaria —el testimonio de un agente de la policía del cual surja el hallazgo de la sustancia controlada y que su análisis químico dio positivo— para demostrar que se había cometido un delito y que existía causa probable para creer que los imputados Carrión Rivera y López Millán lo habían cometido.

Por ello, resolvemos que no erró el Tribunal de Primera Instancia al desestimar las denuncias en el caso que nos ocupa. Los errores segundo y tercero —mediante los cuales el peticionario aduce que el tribunal recurrido erró al desestimar las denuncias aun cuando el peticionario adujo estar preparado para presentar su caso sin contar con el testimonio del agente, y sólo con el informe de prueba de campo—, no se cometieron.

Finalmente, es necesario que atendamos el señalamiento de la parte recurrida referente al apéndice del recurso. Es norma trillada que en dicho apéndice no deben incluirse documentos que no forman parte del récord del caso ante el tribunal *a quo* —salvo la excepción contenida en la Regla 74 del Reglamento de este Tribunal, la cual no es aplicable al caso que nos ocupa—. Específicamente, la Regla 74(B) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. XXII-B, R. 74(B), dispone lo siguiente:

*"En los casos en que, conforme a estas reglas, las partes acompañen un apéndice como parte de un escrito, su presentación deberá cumplir con lo siguiente:*

*"(A)* ...

*(B) Los apéndices sólo contendrán copias de los documentos que formen parte de los autos del Tribunal de Primera Instancia o del expediente administrativo.*

*(C)* ...

*(D)* ...

*(E)* ...

*(F)* ...".

La anterior norma tiene su génesis en sanos principios de deferencia, *al buscar que los tribunales apelativos pasen juicio sobre aquello que ya tuvieron ante su consideración los foros recurridos.* El propósito es, pues, que el tribunal recurrido tenga una oportunidad real de evaluar toda la prueba y que este Tribunal pueda revisar las determinaciones de dicho foro en igualdad de condiciones. Además, el Tribunal Supremo de Puerto Rico ha señalado que la práctica de incluir en el apéndice del recurso escritos que no formaron parte del expediente ante el Tribunal de Primera Instancia, *"es indeseable y debe descontinuarse."* Belmonte v. *Mercado Reverón, Admor.*, 95 D.P.R. 257 (1967).

En el caso de autos, el Procurador General incluyó en el apéndice del recurso de *certiorari* copias de una declaración jurada suscrita por el agente Torres Rivera y del informe de prueba de campo preparado por éste con relación a las sustancias que le fueron ocupadas a los imputados el día de su arresto, las cuales no forman parte del expediente del Tribunal de Primera Instancia. Con su actuación, pone de manifiesto, una vez más, su desidia en atenerse a las normas que gobiernan los procedimientos.

### III

Por los fundamentos consignados anteriormente, se deniega la expedición del auto de *certiorari* solicitado por el Procurador General.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal. El Juez Aponte Jiménez disiente y concurre con opinión escrita.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones